

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00289-CR

| | | |
|---|---|---|
| Willie Mornel Thomas | § | From the 297th District Court |
| | § | of Tarrant County (1234864R) |
| v. | § | November 8, 2012 |
| | § | Per Curiam |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

PER CURIAM


**NO. 02-11-00289-CR**

WILLIE MORNEL THOMAS                                                 APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

----------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

----------

**MEMORANDUM OPINION**[1]

----------

Willie Walker, the manager of the New Start club in Fort Worth, was shot and killed at the club after closing time in January 2009. Appellant Willie Mornel Thomas was convicted of capital murder in connection with Walker's death. In a single point, Thomas asserts that the evidence is insufficient to support his conviction. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

Kenneth Holleman testified that he, Walker, Deborah "Dell" Brown, and Ashley Odom were working at the club that night. Holleman said that he held the back door open for Odom as she left and that, as he turned back around to resume cleaning up, someone came up behind him and hit him in the back of the head, possibly with the butt of a pistol. That person made Holleman lie down on the floor. Holleman heard two men ask where the money was. Holleman said that Walker took one of the men into the kitchen—where Walker kept the money—and that Holleman then heard a struggle and three to four gunshots coming from the kitchen. Holleman thought he heard someone say, "I got the money, let's go." When Holleman got up, he saw Walker lying on the floor, having difficulty breathing.

Brown testified that she was behind the counter counting money after the club closed when a man walked up to Walker, grabbed him by the shirt, and demanded money. Brown could not see the man's face, but she recalled at trial that he was loud and aggressive, was holding a black gun, and was wearing a black shirt and black pants. The man walked with Walker to where he kept the money in the kitchen, and then Brown heard shooting. Brown tried to run to the door to leave but a second man who was standing over Holleman told her not to move. Brown did not look at the second man, but he asked her where the money was; she told him it was by the cash register. The man grabbed the money, went to the kitchen, and told the other man, "Come on, man. Come on, man. I got the

3

money. Let's go, let's go." Brown heard a second gunshot and heard the men run out the back door. She called 911.

Brown testified that Odom's boyfriend Deray Morgan was at the club after closing helping Odom clean up, even though Walker had barred him from the club. Brown said that the man who took Walker into the kitchen was not Morgan, but she did not know if he was the second man. Brown said she was scared of Morgan and that she tried not to look at the men.

Morgan, who was also charged with capital murder as a result of Walker's murder, testified at Thomas's trial. Morgan said that he was dating Odom at the time of Walker's murder and admitted that he, Odom, Thomas, and several other individuals planned to kidnap and rob the bar's owner, Sammie Kindles, who owns several other businesses. Morgan explained that he, Thomas, Byron "Fred" Roquemore, T Lee, and a woman named Keysha went to New Start that night to wait for Kindles. According to Morgan, only T Lee had a gun with him. When Kindles never showed up at the club, they started talking about how much money was in the club. Morgan thought it would be better to wait and rob Kindles, but against his wishes, Thomas, T Lee, and Odom decided to "rob the club" that night after it closed.[2] Odom told Thomas and T Lee to hide in a storage closet in the bathroom until the club closed. Morgan and Odom left the club and waited outside with Keysha and Fred; a few minutes later, Thomas and

---

[2]The indictment alleged robbery of Walker as the underlying robbery offense. *See* Tex. Penal Code Ann. § 29.02 (West 2011).

4

T Lee came outside. According to Morgan, Thomas said that he shot Walker after they struggled for the gun and that Thomas dropped his gun in the club.

Odom testified at Thomas's trial and also explained the plans to kidnap Mr. Kindles. She said that Thomas told her that he shot Walker because he tried to wrestle Thomas for the gun.

Police recovered a semiautomatic pistol from inside the club and determined that the bullets used to kill Walker were fired from that pistol. Forensic DNA analysis determined that Thomas could not be excluded as a contributor of DNA found on the trigger of that pistol but that Morgan, Fred, and T Lee could be excluded as contributors.[3]

Patrick Lawrence, a friend of Thomas's and Fred's, testified that one day while hanging out with Thomas, T Lee, Fred, Morgan, and a few other guys, Morgan told them about a potential robbery in Fort Worth. Thomas later told Lawrence that he "had to do" a person during a robbery, which according to Lawrence means to kill or shoot someone. Fred also told Lawrence that Thomas

---

[3]According to the forensic DNA analyst, thirteen different markers were examined on the DNA mixture found on the trigger, and Thomas's alleles were present in each of the thirteen markers. The analyst explained that at least 99.8 percent of randomly tested individuals from the three major population groups (Caucasian, African-American, and Southwestern Hispanic) would be excluded from the DNA mixture obtained from the trigger swab. She further testified that 1 in 5,959 Caucasian individuals, 1 in 763 African-American individuals, and 1 in 7,289 Southwestern Hispanic individuals would be included as potential contributors.

5

shot someone and dropped the gun and that the other guys were upset because Thomas was "going to get all of [them] in trouble."

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of

the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Isassi*, 330 S.W.3d at 638.

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Isassi*, 330 S.W.3d at 638; *Hooper*, 214 S.W.3d at 13.

Here, Thomas argues that the evidence is insufficient to show that he was the shooter. He asserts that because Odom and Morgan were accomplice-witnesses, their testimony "must be questioned."[4] Thomas also argues that, although the DNA evidence found on the gun linked him to the offense, "there was no evidence excluding others f[ro]m handling the gun. No testimony ruled out the possibility that [Thomas] touched the gun on another occasion, leaving the residue found on the gun."

Under the accomplice-witness rule, a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense. Tex. Code Crim. Proc. Ann. art. 38.14. When evaluating the sufficiency of corroboration evidence under the accomplice-witness rule, other evidence must link the accused in some way to the commission of the crime and show that "rational jurors could conclude

---

[4]The jury charge included an accomplice-witness instruction and instructed the jury that Odom and Morgan were accomplices as a matter of law. *See* Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005).

that this evidence sufficiently tended to connect [the accused] to the offense." *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009); *see Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (explaining that the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt by itself).

Here, the DNA evidence from the gun and the non-accomplice-witness testimony of Lawrence tended to connect Thomas to the offense and sufficiently corroborated Odom's and Morgan's testimony. *See* Tex. Code Crim. Proc. Ann. art. 38.14; *Neal v. State*, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009). And although there was no evidence excluding others from handling the gun, as Thomas argues on appeal, "[f]or the evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012); *Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999) ("We have rejected the reasonable hypothesis construct as a measure of legal sufficiency."). Under the applicable standard of review, viewing the evidence in the light most favorable to the verdict, presuming that the jury resolved any conflicting inferences in favor of the verdict, and deferring to that resolution, we hold that the evidence, as set forth in detail above, is sufficient to support Thomas's conviction for capital murder. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Isassi*, 330 S.W.3d at 638. We overrule his sole point and affirm the trial court's judgment.

PER CURIAM

PANEL:  WALKER, DAUPHINOT, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  November 8, 2012